IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SUSAN CAPUANO (TORDA),<br>Legal Guardian for Joseph Torda<br>Michael Torda,<br><br>Plaintiff, *Pro Se*,<br>v.<br><br>FAIRFAX COUNTY PUBLIC BOARD,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:13-cv-00568-GBL-TRJ |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff Susan Capuano's Motion for Summary Judgment (Doc. 31) and Defendant Fairfax County Public Board's Motion for Summary Judgment on the Administrative Record (Doc. 33). Plaintiff, the mother of Joseph Torda, a disabled student who attended Fairfax County Public Schools ("FCPS"), challenges an administrative hearing officer's finding that Plaintiff was prohibited from seeking review of her son's disability eligibility categories because the claims were barred by the doctrines of res judicata and collateral estoppel.

There are two issues before the Court. The first issue is whether Plaintiff's previously litigated disability claims are barred by the doctrines of res judicata and collateral estoppel where Plaintiff provided no new evidence of a change in circumstances. The second issue is whether Plaintiff's claim regarding the disability category of "visual impairment" is barred by the doctrines of res judicata and collateral estoppel, or alternatively, barred due to Plaintiff's failure to exhaust her administrative remedies.

First, the Court holds that Plaintiff's autism, auditory processing disorder, and multiple disabilities claims are barred by collateral estoppel because the issues were previously litigated in an

administrative hearing and in subsequent judicial appeals between 2010 and 2013. Additionally, Plaintiff has failed to show a material change in circumstances warranting rehearing the issues.

Second, the Court holds that Plaintiff's visual impairment claim is barred by collateral estoppel because the issue was litigated in a 2010 administrative hearing which Plaintiff chose not to appeal. To the extent there exists new evidence regarding a change in Joseph Torda's vision, consideration of the issue is barred because Plaintiff failed to exhaust her administrative remedies. Plaintiff did not raise the issue in her 2012 due process hearing request ("2012 DPH Request") despite being given the opportunity to amend her Request.

Accordingly, the Court GRANTS Fairfax County Public Board's ("FCPB") Motion for Judgment on the Administrative Record (Doc. 33) and DENIES Plaintiff's Motion for Summary Judgment (Doc. 31).

## I. FACTUAL BACKGROUND

Joseph Torda is a 22 year-old male with Down syndrome, significant cognitive deficits, communication difficulties, and motor skills problems. (Doc. 24, Administrative Record [hereinafter "AR"] 7E at 2.) Joseph Torda functions significantly below his age level in all academic and adaptive behavior areas. *Id.* His IQ has been measured at 51, and his cognitive ability falls within the "extremely low" range, i.e., below the first percentile. *Id.* Joseph Torda has significant difficulty analyzing and synthesizing abstract concepts and can only retain very limited sets of information in his short-term memory. *Id.* at 4. Joseph Torda is eligible for special education as a student with cognitive/intellectual disabilities. *Id.*

Over the years, there have been many disagreements between Plaintiff Susan Capuano Torda ("Ms. Capuano") and Defendant Fairfax County Public Board ("FCPB"), the legal entity representing Fairfax County Public Schools ("FCPS"), over the diagnosis of Joseph Torda's disabilities, his

eligibility for disability categories, his educational placement, and the services he has received under his various annual individualized education plans ("IEPs").

The appeal currently before the Court stems from a September 2010 eligibility committee meeting decision which found Joseph Torda eligible for special education services in the areas of intellectual disability and speech/language impairment and not eligible in the categories of autism, specific learning disability (relating to auditory processing disorder ("APD")), visual impairment, and multiple disabilities. AR 7F. Ms. Capuano disagreed with this eligibility finding and provided FCPS with a statement dissenting from the results of the eligibility committee meeting. AR 7F. Ms. Capuano also expressed dissatisfaction to FCPS with regard to Joseph Torda's January 24, 2011 IEP. Pl.'s Reply Br. Ex. 5. In September of 2012, two years after the eligibility committee meeting, Plaintiff filed a request for a due process hearing ("2012 DPH Request") asserting Joseph Torda's eligibility under the categories of (a) autism, (b) specific learning disability, because of his alleged APD, and (c) multiple disabilities. AR 1 at 2. The only evidence Plaintiff provided in her request was the following:

- 2010 Lucker Evaluation (Audiologist)
- 2010 Gordon Report (Clinical Psychologist)
- 2010 LeMieux Report (Speech-language Pathologist)
- 2005 Lucker Evaluation (Audiologist)
- 2005 Federici Evaluation (Psychologist)

Defendant filed a twelve page Motion to Dismiss, accompanied by fourteen exhibits, with the assigned Hearing Officer, Mr. Alvey ("HO Alvey"), stating that Ms. Capuano's claims were barred by res judicata and collateral estoppel. Defendant argued that Plaintiff's 2012 DPH Request alleged the same disability categories previously decided in an administrative hearing (2010 HO Aschmann Decision) and subsequent judicial appeal. Defendant contended that the five pieces of evidence that

Plaintiff relied on in her DPH Request were previously considered by this Court in its 2012 decision *Torda ex rel. Torda v. Fairfax Cnty. Sch. Bd.*, No. 1:11CV193, 2012 WL 2370631 (E.D. Va. June 21, 2012), *aff'd*, 517 F. App'x 162 (4th Cir. 2013) (hereinafter "*Torda I*"). Therefore, Defendant asserted that Plaintiff failed to state a claim upon which relief could be granted. AR 7. HO Alvey directed Plaintiff to amend her DPH complaint to state a claim upon which relief could be granted and to respond directly to Defendant's Motion to Dismiss. The parties agreed to waive oral argument on the Motion to Dismiss. AR 8.

Plaintiff amended her 2012 DPH Request to add a claim that "FCPS failed to offer Joseph Torda an IEP that confers FAPE [free appropriate public education] in the 2010-2011 school year (and beyond)" because of the failure to "properly" identify the three eligibility categories listed. AR 34 at 3. Additionally, Plaintiff amended her requested relief to include compensatory education including remediation for APD and services to address autism. *Id.* Plaintiff opposed the Motion to Dismiss on the grounds that the eligibility determination on APD and multiple disabilities was not subject to res judicata or collateral estoppel because the previous case was on appeal to the Fourth Circuit and therefore there was no final decision regarding eligibility. AR 35. Nowhere in her Amended 2012 DPH Request did Plaintiff mention any facts relating to vision difficulties or visual impairment eligibility, nor did Plaintiff request relief for multiple disabilities or vision. Plaintiff now asserts that FCPB mislead HO Alvey by characterizing her claim as intending to rely on the same evidence. Despite this belief, and her own legal training,[1] Ms. Capuano's 2012 Amended DPH Request did not cite any further evidence upon which she intended to rely to support her claims.

Based on the doycuments submitted to HO Alvey, the Defendant's Motion was granted. Specifically, Mr. Alvey found that the 2010 DPH on autism and this Court's decision in *Torda I* as to

[1] During oral argument on August 23, 2013, Ms. Capuano, proceeding pro se, advised the Court that she graduated from law school.

the remaining issues of auditory processing disorder and multiple disabilities warranted dismissal of the 2012 DPH Request. Mr. Alvey found that Plaintiff had fully litigated the issues and received a final decision on the merits and intended to rely on the same evidence that this Court had already evaluated.

Plaintiff appealed HO Alvey's decision to the Circuit Court of Fairfax County. Defendant subsequently removed the matter to this Court. The parties filed cross-motions for judgment on the administrative record on July 19, 2013, and oral argument occurred on August 23, 2013.

## II. STANDARDS OF REVIEW

### a. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–324 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law unless a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. *See id.* at 247–48.

### b. IDEA Cases

Among the purposes of the Individuals with Disabilities Education Act ("IDEA") is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A) (2010).

Under IDEA, reevaluations of a child's disability and IEP services shall occur at least once every three years, and, at times annually. *Id.* § 1414(a)(2)(B) (2010). IDEA establishes these review procedures in order to "assess, and ensure the effectiveness of, efforts to educate children with disabilities." *Id.* § 1400(d)(4) (2010). Under IDEA, parents are afforded the opportunity to present a due process complaint with respect to any identification, evaluation, or educational placement of a child or provision of FAPE that must include a description of the nature of the problem of the child including facts relating to the problem and a proposed resolution. *Id.* § 1415(b) (2010). A party who has received a due process complaint notice may challenge the sufficiency of the complaint by notifying the hearing officer and opposing party of the alleged inadequacy of the complaint. *Id.* § 1415(c)(2) (2010). A party is not entitled to a due process hearing unless the notice filed is in sufficient under the statute. *Id.* § 1415(b)(7)(B).

Any party involved in the due process hearing challenging "the identification, evaluation, or educational placement of the child" may seek relief from the decision of the hearing officer by "bring[ing] a civil action with respect to the complaint . . . in any State court of competent jurisdiction or in a district court of the United States[.]" *Id.* § 1415(i) (2010). When a party appeals an administrative officer's decision in an IDEA case, the party seeking to overturn the decision has the burden of proof to demonstrate that it was erroneous. *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 409 F. Supp. 2d 689, 692 (E.D. Va. 2005), *rev'd and remanded on other grounds*, 484 F.3d 672 (4th Cir. 2007). In a judicial appeal of an administrative officer's decision, the court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

## III. ANALYSIS

The Court grants Defendant's Motion for Judgment on the Administrative Record and denies Plaintiff's Motion for Summary Judgment for two reasons. First, Plaintiff's claims regarding disability eligibility for the categories of autism, specific learning disability (APD), multiple disabilities, and vision impairment are barred by collateral estoppel as the issues have been fully litigated on the merits and no evidence of a material change in circumstances was submitted in the 2012 DPH Request. Second, Plaintiff's claim of vision impairment based on any new evidence since the 2010 administrative hearing is prohibited because Plaintiff did not bring that issue before HO Alvey in either her Amended 2012 DPH Request or Opposition to the Motion to Dismiss.

a. Res Judicata and Collateral Estoppel Applicability to IDEA Cases

The Court finds that because there exists a statutory right to evaluate a student's IEP on an annual basis and have administrative review and a subsequent judicial appeal, where an IDEA appeal is based on a different school year, claim preclusion does not apply. Furthermore, the Court holds that issue preclusion (collateral estoppel) *does* apply in the context of IDEA cases regarding eligibility and services provided in different school years if an issue has been fully litigated and decided on the merits and no new evidence of a material change in circumstances has been presented.

The concepts of res judicata and collateral estoppel have long been applied in federal court to avoid the futility of relitigation. In *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal citations omitted), the Supreme Court stated:

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits,

> conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

The doctrines of res judicata and collateral estoppel have been extended to apply to IDEA administrative decisions as well. *E.g.*, *Ross ex. rel. Ross v. Bd. of Educ. of Township High Sch. Dist. 211*, 486 F.3d 279, 282-85 (7th Cir. 2007); *Theodore v. District of Columbia*, 772 F. Supp. 2d 287 (D.D.C. 2011); *Dutkevitch v. Pittston Area Sch. Dist.*, No. 3:12CV994, 2013 WL 3863953 (M.D. Pa. July 24, 2013); *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927 So.2d 224, 226 (Fla. Dist. Ct. App. 2d Dist. 2006).

When determining whether a subsequent case is barred, courts make three inquiries:

(1) Whether the parties are identical or in privity;

(2) Whether there was a final judgment on the merits; and

(3) Whether both suits are based on the same cause of action.

*In re Varat Enters., Inc.*, 81 F.3d 1310 (4th Cir. 1996). Claim preclusion involves an inquiry into whether a litigant's new claim was brought in the original suit or should have been brought in the original suit because it arises out of the same transaction or series of events. Issue preclusion, on the other hand, involves an inquiry into whether a legal or factual issue was actually decided in the previous case and was essential to its judgment. *Id.* at 1315.

Neither this Court nor the Fourth Circuit have addressed whether claim preclusion or issue preclusion apply to IDEA claims regarding a different time period of eligibility than a previous suit where no evidence of a change in circumstances has been put forth. Other courts, however, have developed a variety of approaches. *See Theodore*, 772 F. Supp. 2d at 293 (applying claim preclusion where "same nucleus of fact" because facts related in *time*, space, origin, or motivation, etc.); *cf. M.C.G.*, 927 So.2d at 226-28 (finding that claim preclusion cannot apply in IDEA cases because each IEP relates to a new school year and thus is inherently a different cause of action; however, issue preclusion *is* applicable in IDEA cases where there has been "no material change in circumstances"); *cf.*

*T.G. ex rel. Gutierrez v. Baldwin Park Unified Sch. Dist.*, 443 F. App'x 273, 276 (9th Cir. 2011) (finding that each school year is a different issue and therefore collateral estoppel cannot apply).

A review of the rationales provided in these cases, as well as the language and purpose of IDEA, demonstrates the proper approach in evaluating whether a claim under a new school year is barred by claim preclusion or issue preclusion absent no evidence of a change in circumstances. As the purpose of IDEA is to ensure that students with disabilities receive free appropriate public education, which is dependent on the *current* disability status of a student, it follows that IDEA requires constant reevaluation of eligibility categories and the appropriateness of IEPs, and allows parents to appeal such eligibility determinations. 20 U.S.C. § 1400. The Fourth Circuit has taken a similar approach for claim preclusion with respect to social security disability appeals. *See Peoples v. Richardson*, 455 F.2d 924, 925 (4th Cir. 1972) (res judicata applies where "rights, issues, and facts" involves in successive disability benefits application were the same); *cf. Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 476 (4th Cir. 1999) (recognizing that conversely, claim preclusion does not apply to successive applications for disability benefits to the extent that the most recent application applies to a different period of time because the passage of time may affect physical and mental conditions).

Because IDEA seems to create a statutory right to a new cause of action each time an IEP is reevaluated, claim preclusion will not apply where the claim relates to a new school year. This is supported by the approach taken in *M.C.G.* where the court found that: "[a] cause of action to establish entitlement to services under the IDEA by its nature pertains to a particular period of time and is based on the factual circumstances at that time." 927 So.2d at 227. Although on first blush, *Theodore* seems at odds with this finding by holding that claim preclusion does apply where the cause of action is based on the same facts, the *Theodore* court emphasized whether the claims relate to the same time period, among other factors, seeming to indicate that where a new school year is involved, claim preclusion might not

apply. Therefore, this Court holds that where an IDEA claim is based on a new school year, claim preclusion does not apply.

With respect to collateral estoppel, a review of the aforementioned cases, as well as the principles underlying the doctrine, suggest that the proper approach regarding issue preclusion is that a factual or legal issue already decided but raised under a new school year, where no material change in circumstances exists, is barred by collateral estoppel. The court in *M.C.G.* addressed this exact issue and found that "the variation in the time periods at issue in the two cases—which prevents application of the doctrine of res judicata—is not an impediment to application of the doctrine of issue preclusion, at least where there has been no material change of circumstances." 927 So. 2d at 227–28. The court further quoted the following from the Restatement (Second) of Judgments § 27, comment c: "[I]n the absence of a showing of changed circumstances, a determination that ... a person was [entitled to services under the IDEA] in one year will be conclusive with respect to the next [year] as well." *Id.*

The very purpose of collateral estoppel is to prevent parties from relitigating facts or legal issues already decided by a court or administrative agency. In Joseph Torda's situation, the challenge involves his disability diagnosis. There is no dispute that the parties are identical and that there has been a final judgment on the merits for all of the eligibility categories because of *Torda I* and the 2010 HO Aschmann Decision. Additionally, Plaintiff and Defendant agree that collateral estoppel *would not apply* in circumstances where eligibility is challenged for a new school year and *new evidence* such as evaluations or medical diagnoses have become available such that a fresh determination is appropriate. The Court now analyzes each category of disability education in turn to assess whether claims under those categories have been collaterally estopped based on the evidence provided to HO Alvey.

b. Categories of Special Education Eligibility for the School Years of 2010–2013

Plaintiff's claims regarding designation in the categories of autism, APD, multiple disabilities, and visual impairment are barred by collateral estoppel because there is a final decision on the merits of those disability categories which precludes reconsideration where no new evidence was provided in the 2012 DPH Request.

*i. Autism*

As required under an inquiry into collateral estoppel, the key issue here is whether the factual or legal issue has been previously fully litigated and decided on the merits by a federal court or administrative agency. Plaintiff explicitly raised the issue of Joseph Torda's eligibility for the disability category of "autism" during an extensive 2010 Due Process Hearing. In HO Aschmann's hearing, there was testimony from 32 witnesses and hundreds of documents presented concerning issues such as Joseph Torda's alleged autism diagnosis. AR 7B. HO Aschmann ultimately found that there was insufficient evidence to prove that Joseph Torda qualified for services in the category of autism disability. In her original appeal to this Court in *Torda I*, despite having access to all of the 2005 and 2010 evaluations listed in her 2012 DPH Request, Plaintiff chose not to raise the issue of whether Joseph Torda should qualify for the category of autism. Therefore, HO Aschmann's findings constitute a final decision on the merits regarding that issue and are entitled to collateral estoppel. In her 2012 DPH Request to HO Alvey, Plaintiff did not set forth any specific new evidence such as post-2010 evaluations that would show a change in diagnosis. Plaintiff was allowed an opportunity to amend her Request after reviewing Defendant's Motion to Dismiss, which put her on notice of the collateral estoppel and res judicata arguments, and yet she failed to identify any new evidence supporting her autism claim. For these reasons, Plaintiff is collaterally estopped from relitigating the issue of Joseph Torda's eligibility for the disability category of autism.

*ii. Auditory Processing Disorder*

Unlike Plaintiff's decision not to appeal the autism determination by HO Aschmann, Plaintiff did expressly appeal Joseph Torda's eligibility for the disability category of "auditory processing disorder" to this Court just last year and further appealed this Court's order to the Fourth Circuit. In 2013, the Fourth Circuit affirmed this Court's finding that Plaintiffs had not proven by a preponderance of the evidence that Joseph Torda should be eligible for auditory processing disorder services. In coming to its decision, this Court allowed Plaintiff to supplement the previous administrative record with more recent medical evaluations through 2012, so that the Court could make a determination regarding Joseph Torda's *current* condition, rather than his condition as of the 2007–2008 school year.

Plaintiff asserts that the 2010 Lucker Report is new evidence supporting Joseph Torda's APD qualification. Plaintiff maintains that this Court did not give adequate consideration to the 2010 Lucker Report in light of the Court's focus on the 2007–2008 school year and as such, the final decision regarding the APD diagnosis did not really evaluate the Lucker report. Plaintiff misunderstands this Court's previous findings. Plaintiff relies on the following language from *Torda I*, 2012 WL 2370631 at *16, in her misguided interpretation (internal citations omitted):

> The Court holds, first, that the 2010 Lucker Report is entitled to little weight as evidence of Defendants' failure to provide a FAPE to Joseph Torda during the 2007–08 school year because this Report was made after the challenged IEP was created and after the 2007–08 school year in which it was implemented. Any information or recommendations contained in the Report that would have been useful in the development of the 2007–08 IEP was not available at the time, and, therefore, it would be unreasonable to hold the school system liable for failing to consider it.

Viewing this statement in isolation is what led to Plaintiff's incorrect interpretation. This quotation concerns the extent to which the Court should consider the 2010 Lucker Report when determining whether FAPE was provided in 2007–2008. The first half of this Court's opinion, which precedes the above 2007–2008 FAPE discussion, focuses on whether Plaintiff had proven by a preponderance of the evidence that Joseph Torda *currently* (as of 2012) has an auditory processing

disorder, including discussion of all of the 2010 reports included in Plaintiff's 2012 DPH Request. In that analysis, this Court went into great depth regarding why the APD diagnosis from the 2010 Lucker Report should be given little weight, specifically that "(a) in diagnosing Joseph Torda with APD, Dr. Lucker employed dubious evaluative methods; and (b) the Court is persuaded by the Thompson Report and the Johnson Report that any auditory processing problems displayed by Joseph Torda are primarily the result of his intellectual disability." *Torda I*, 2012 WL 2370631, at *10.

Plaintiff also contends that the 2011 Medwetsky Report supports APD eligibility, and should be considered regarding eligibility for the 2010–2011 school years and beyond. AR 35. In this argument, Plaintiff overlooks the fact that this Court previously entered an Order on Defendant's Objections to Plaintiff's Additional Exhibits from *Torda I* sustaining Defendant's objections to admissibility of the Medwetsky Report under Federal Rule of Evidence 702 because it was not clear from the report that Dr. Metwetsky used reliable principles and methods. Def.'s Br. in Supp. of Mot. for J. Ex. 1. Additionally, the Medwetsky Report was not provided to HO Alvey in the 2012 DPH Request.

In her 2012 DPH Request to HO Alvey, Plaintiff *did not* set forth any specific new evidence such as evaluations conducted after 2010 that would show a change in diagnosis. Plaintiff was allowed an opportunity to amend her Request after reviewing the Defendant's Motion to Dismiss, which put her on notice of the collateral estoppel and res judicata arguments, and yet she did not identify any new evidence to support her APD claim.

Therefore, Plaintiff's request to overturn HO Alveys' dismissal regarding APD eligibility is denied because a final decision on the merits of Joseph Torda's 2013 APD eligibility was rendered by the Fourth Circuit, estopping future litigation of that issue absent new evidence. Nothing that Plaintiff points to in the Administrative Record constitutes new evidence that would preclude collateral estoppel regarding APD eligibility.

*iii. Multiple Disabilities*

In order to understand Plaintiff's "multiple disabilities" claim and subsequent vision impairment claim, it is essential to first define "multiple disabilities" as it is intended in IDEA. A child with multiple disabilities is one who has "concomitant impairments. . . the combination of which causes such severe educational needs that they cannot be accommodated in special education programs solely for one of the impairments." 34 C.F.R. § 300.8(c)(7) (2007). According to the National Center for Children with Disabilities, combinations such as intellectual disability/blindness, intellectual disability/orthopedic impairment, etcetera, fall into this category. Deaf-blindness does not qualify. Pl.'s Resp. to Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 5.

In *Torda I*, this Court found that the record did not support a finding that Joseph Torda has multiple disabilities. In her appeal to the Fourth Circuit, Plaintiff's stated grounds for error by the district court *did not* include "multiple disabilities." Therefore, this Court's 2012 decision in *Torda I* stands as a final decision on the merits of "multiple disabilities" eligibility. Plaintiff is thus estopped from further litigation absent new evidence. In her 2012 DPH Request to HO Alvey, Plaintiff presented no new evidence that was not already considered by this Court in coming to its 2012 "multiple disabilities" eligibility holding. Plaintiff was allowed an opportunity to amend her Request after reviewing the Defendant's Motion to Dismiss, which put her on notice of the collateral estoppel and res judicata arguments, and yet she did not identify any new evidence to support her multiple disabilities claim.

*iv. Visual Impairment*

Plaintiff's claim that Joseph Torda should be recognized as having a "visual impairment" is barred by collateral estoppel. Any new evidence Plaintiff may have regarding Joseph Torda's vision must be excluded because it was not presented to HO Alvey and as such, Plaintiff has not exhausted her administrative remedies.

1. Collateral Estoppel

The key issue is whether the factual or legal issue has been already fully litigated and decided on the merits by a federal court or administrative agency. Similar to the autism claim, Plaintiff explicitly raised the issue of whether Joseph Torda should be eligible for the disability category of "visual impairment" during the extensive 2010 Due Process Hearing. HO Aschmann found that Joseph Torda had been provided with sufficient accommodations to access educational materials in order to comply with FAPE and therefore he would not add vision impairment to Joseph Torda's disability eligibility because the current adjustments were successful. Similar to Plaintiff's autism claim, Plaintiff could have appealed the 2010 HO decision but explicitly chose not to appeal the issue to this Court in *Torda I.* Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 11. Therefore, a final decision on the merits regarding Joseph Torda's "visual impairment" eligibility was made and properly precludes relitigation of the issue absent new evidence of a material change in circumstances.

2. Exhaustion

Even if Plaintiff has new evidence of a changed circumstance for 2010–2012, she is barred from raising the claim because she did not exhaust her administrative remedies. The language of IDEA clearly indicates that in order to bring a judicial appeal regarding an eligibility determination, a plaintiff must first exhaust her administrative remedies by raising that claim in her request for a due process hearing. 20 U.S.C. § 1415(f); *see also Doe v. Arlington Cnty. Sch. Bd.*, 41 F. Supp. 2d 599, 607 (E.D. Va. 1999) (dismissing claim in district court action on grounds that Plaintiff failed to exhaust a claim not raised in the administrative proceedings); *A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 n.7 (4th Cir. 2007) (incorporating similar standard set forth in *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 424 (1st Cir. 1985)).

A plaintiff may not even raise a problematic eligibility determination in an administrative due process hearing, let alone a judicial appeal, if the issue is not listed in the due process hearing request. 20 U.S.C. § 1415(b). The only situation in which a plaintiff is not required to exhaust administrative remedies is where such efforts would be futile. *Harris v. Campbell*, 472 F. Supp. 51, 54 (E.D. Va. 1979). Here, Plaintiff does not claim futility and as such, the exception is irrelevant to this Court's analysis. Furthermore, Plaintiff does not disagree with the established law regarding exhaustion. Rather, she disputes whether she did, in fact, raise the issue of eligibility under the visual impairment category in her 2012 DPH Request.

There is no question that Joseph Torda has suffered from vision difficulties over the years and that FCPS has provided some accommodations in that regard. AR 7B. The question is whether Plaintiff raised those concerns in her 2012 DPH Request. Plaintiff asserts that as Joseph Torda's claim for "multiple disabilities" invariably includes vision impairment, that reference to "multiple disabilities" was sufficient to present her vision-services concerns to HO Alvey.

The Court rejects Plaintiff's characterization of her 2012 DPH Request. Nowhere in the 2012 DPH Request are vision issues mentioned beyond the attachment of Ms. Capuano's disagreements with September 9, 2010 eligibility team meeting. Under IDEA, vision impairment is a separate disability category for which a parent may request services. Plaintiff is aware that it is a separate category as demonstrated in her previous requests. AR 7A. Clearly, Plaintiff has had concerns about Joseph Torda's vision for many years as she has previously raised it in the 2010 administrative hearing, objected to the September 2010 eligibility, and objected again to a January 2011 IEP on visual impairment grounds. Yet her in 2012 DPH Request, Plaintiff does not mention vision in the statement of facts and does not provide any evidence relating to vision. Additionally, none of the relief that she requested even refers to multiple disabilities, let alone vision. Indeed, Plaintiff only requests compensatory education to

remediate APD and services to address autism. This is in stark contrast to her judicial appeal after the request was dismissed which focuses large amounts of discussion of Joseph Torda's rare visual condition and request accommodations for his vision problems by providing placement at Perkins School for the Blind and Vision Impaired. Pl.'s Compl. at 1–4.

The Court has reviewed the "additional evidence" that Plaintiff now supplies as is required under IDEA. The Court has determined that since it was not provided to HO Alvey, even though most of the evidence was available at the time and Plaintiff was presented with an opportunity to amend her Request, it should be given no weight, especially since many of new exhibits are pure scholarship with no diagnosis of Joseph Torda and many others have ambiguous relevance. Furthermore, in consideration of the purpose of the IDEA judicial *appeal* process of an administrative decision on the record—*not* as an unfettered de novo review—Plaintiff should not, in the interest of procedural fairness be allowed to now introduce previously available evidence of her claim.

Joseph Torda's vision claims were fully litigated in 2010 and therefore are precluded from relitigation. Even Joseph Torda's multiple disabilities claim was fully litigated in 2012 and therefore also precluded from relitigation. Plaintiff's "new" evidence from 2010–2012 is excluded because Plaintiff did not raise the eligibility category of vision impairment, provide evidence of vision impairment, or request vision services in her 2012 DPH Request. Therefore, Plaintiff did not exhaust her administrative remedies as required by IDEA.

## IV. CONCLUSION

The Court grants Defendant's Motion for Judgment on the Administrative Record (Doc. 33) and denies Plaintiff's Motion for Summary Judgment (Doc. 31) for two reasons. First, Plaintiff's claims regarding disability eligibility for the categories of autism, specific learning disability (APD), multiple disabilities, and vision impairment are barred by collateral estoppel. The issues have been fully litigated

on the merits and no evidence of a material change in circumstances was submitted in the 2012 DPH Request, despite the notice given to Plaintiff regarding these arguments and her ability to amend the Request. Second, Plaintiff's claim of vision impairment based on any new evidence since the 2010 administrative hearing is precluded from being raised because Plaintiff did not bring that issue before HO Alvey and therefore her administrative remedies have not been exhausted with respect to that issue.

ENTERED this 29th day of October, 2013.

Alexandria, Virginia
10/29/2013

/s/
Gerald Bruce Lee
United States District Judge